LoniNCf:, J.,
delivered tlie opinion of the court:
By the contract the claimant undertook “ to furnish all the labor required in the collector’s department of the United States public store (in New York) for the term of three yearsand this term was extended as shown. The petitioners claim to be re-imbursed for deductions made from their stipulated compensation, for expenses of the steam-engine $5,209.30, and for salaries of United States employés $4,050, amountingtogetker to the sum of $9,259.30.
The contract is express in its terms, and is confined to “ labor,” and we think this term cannot be applied to a steam-engine, which is machinery, and in no sense u labor f and therefore we think that the petitioners were not chargeable for the cost of coal and oil, and in working the machinery which the defendants adopted as a means of saving labor.
But the three men employed upon the elevator in hoisting and lowering goods were laborers in the strictest sense of that word, and therefore their compensation was chargeable to that claimants under the contract. But it is found that while these three men were paid by the Government they received stipulated salaries of $900 per year, which were paid directly to them by monthly payments at the custom-house. But when these sáme three persons were dismissed by the Government and employed on the same work by the claimants, their pay was $2 per day while employed. On this evidence we think $2 per day was a reasonable compensation for their services, and all that the Government could fairly charge to the claimants, and therefore that the excess of this, amounting to $510, should be reimbursed to the claimants. On these reasons we framed our judgment.
For the cost of coal, water, &c., for the steam-engine .$5, 209 30
Excess paid to three elevator-men. 510 00
Making in all. 5, 719 30
It was contended for the petitioners that the fact that for months the United States paid the salaries of the three elevator-men was of itself proof of how the contract was understood when it was made, and by those who made it, and therefore of *475 their intent-, which is the object of construction. This objection would be efficient if the words of the contract were capable of two constructions, so that the parties had an election between the two meanings. But where the words of a contract are capable of but one meaning, and are thus free from ambiguity, the contract is to be administered according to its terms. Because that the parties in the first instance acted erroneously on the terms of the contract as to some details of its execution not specified in it, is no reason why either party should be bound to continue that erroneous action after the mutual mistake is discovered, there haring been no intention to alter the contract. And especially in such case is a Government contract to be administered according to its terms where it is made by the subordinates in a Department, and before its adoption is to be approved by the head of the Department, whose approval of it can only be according to its terms.
It was objected on the part of the defendants that the Secretary of the Treasury had no authority to make the original contract, and consequently no authority to extend it. But the original contract was made by the collector, who had authority to make it, and all that it states on its face is that it was made “by the direction” of the Secretary. If such direction Avas without official authority, then at the most it was a legal nullity, and the collector knew that, and its statement is referable not to any duress exercised on him, but rather to a desire to show that his official action had the approval of his superior and chief.
As to the extension of the duration of the contract by the Secretary, if he had no authority for that, yet the contract for that extension has been executed, the claimants have rendered the services, and the United States have received them and are liable to pay for them; and the price agreed upon between the parties for the like services is the measure of compensation.
It was also objected that the contract was void because proposals were not advertised for; but here again the contract was performed and its benefit received, and therefore to be paid for, and the facts show the price allowed was fair, for the parties themselves agreed upon it.